IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BETH WEINSTEIGER | : | CIVIL ACTION |
| v. | : | |
| MICHAEL J. ASTRUE | : | NO. 09-1769 |

## REPORT AND RECOMMENDATION

THOMAS J. RUETER
Chief United States Magistrate Judge                January 5, 2010

  Plaintiff, Beth Weinsteiger, filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration "("Commissioner") denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

  Plaintiff filed a Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), defendant filed a Response to Request for Review by Plaintiff ("Def.'s Br.") and plaintiff filed a reply thereto ("Pl.'s Rep."). For the reasons set forth below, this court recommends that plaintiff's Request for Review be granted and the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**I.      FACTS AND PROCEDURAL HISTORY**

  Plaintiff filed applications for DIB and SSI alleging disability since November 30, 2005 due to back pain and mood disorders. (R. 81-94, 118-26.) The claim was denied initially and a request for review was timely filed. (R. 95.) A hearing was held on February 13, 2008, before Administrative Law Judge ("ALJ") Janice C. Volkman. (R. 32-80.) Plaintiff, who was

represented by counsel, appeared and testified. Plaintiff also presented the testimony of witnesses Gail Youse, her mother, and Dennis DeFrangesco, her boyfriend. Id. Vocational expert (" VE") Nancy Harter also appeared and testified. (R. 76-79.) Richard Cohen, M.D., a medical expert ("ME"), also appeared and testified. (R. 64-70.) In a decision dated March 18, 2008, the ALJ found that plaintiff was not disabled under the Act. (R. 19-29.) The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since November 30, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease, obesity and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she is limited to simple, repetitive and low stress work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 5, 1959 and was 46 years old, which is defined as a younger individual age 45-59, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of

> disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c) and 416.966).
>
> 11. The claimant has not been under a "disability," as defined in the Social Security Act, from November 30, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 19-29.)

Plaintiff filed a request for review of the decision of the ALJ that was denied by the Appeals Council on April 14, 2008. (R. 1-4.) The ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh the evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507

U.S. 924 (1993)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings. <u>Monsour Med. Ctr. V. Heckler</u>, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for benefits, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(a)(A); 1382c(a)(3)(A). Specifically, the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § § 423(d)(2)(A); 1382(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. <u>Rossi v. Califano</u>, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 CFR §§ 404.1520(f), 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an

impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520, 416.920.

## III.    BACKGROUND

### A.    Testimony of Plaintiff, February 18, 2008

At the administrative hearing, plaintiff, accompanied by her counsel, appeared and testified. (R. 32-49.) At the time of the hearing, plaintiff was forty-eight years old. (R. 39.) Plaintiff reported that she was divorced, with three adult children. (R. 43.) Plaintiff stated that her most recent employment as a care giver ended in 2006. Id. She ceased work because she was unable to perform the job due to a lack of concentration. (R. 39-40.) Plaintiff previously had been employed as a data entry clerk; she also had performed medical billing and customer service work. (R. 40-41.) She was fired from the medical billing job because she missed too much work. She resigned from the data entry job because she "just couldn't, mentally, I needed something different. It was just, I don't know, too hard to do the bookkeeping end of it anymore, just wanted to get into something different." (R. 42.)

In response to questioning as to why she was unable to work, plaintiff replied: "I'm having some problems with my health, with, with being around people, socializing with people. I have some incontinency, which is the main thing, which is the hardest thing for me right now. And I, I don't like to leave my house and I feel paranoid. And I feel frightened." (R. 42.) Plaintiff began treating with a therapist, but explained that it was difficult to attend appointments because she experienced panic attacks. (R. 44.) In addition to the aforementioned limitations, plaintiff also suffered from frequent migraine headaches, as well as joint, leg and

5

hand pain. (R. 47.) She was unable to go up and down stairs. She experienced numbness in her hands which caused her to drop things. Id.

Although plaintiff was able to drive, she drove infrequently. (R. 45.) Plaintiff had no hobbies and did not exercise. (R. 43-45.) She explained that her mother and boyfriend assisted her with daily activities, including food preparation. (R. 45-46.)

Plaintiff admitted that she had a problem with alcohol in the past. (R. 46.) She related that she no longer drank alcohol because she had "a couple of DUI's and it was bad. Then my sister was killed in a car accident. She was drinking, and after that I said I'm not going to, I'm not going to drink no more." (R. 46-47.)

### B. Testimony of Plaintiff's Witness, Gail Youse

At the administrative hearing, plaintiff also presented the testimony of her mother, Gail Youse. (R. 49-64.) Ms. Youse assisted her daughter with bathing, cleaning, cooking and shopping. (R. 50-51, 54.) According to Ms. Youse, plaintiff slept on the sofa in the living room because she had difficulty navigating stairs. In addition, plaintiff was fearful of going to the upper floors of her home. (R. 53-54.) Ms. Youse testified that her daughter had gained a lot of weight and as a result was unable to walk around the block. (R. 54.)

Ms. Youse described her daughter as a loner who had no hobbies. Her daughter complained of daily headaches as well as hand, leg and back pain. (R. 55-56.) The witness added that her daughter did not deal well with stress or change. (R. 59.) She suffered from poor memory and concentration. (R. 61.) Ms. Youse opined that her daughter's health seemed to deteriorate after plaintiff was diagnosed with Lyme disease. (R. 63.) According to Ms. Youse, plaintiff had been in physically abusive relationships in the past. (R. 58-59.) As a result of this

abuse, claimant suffered broken ribs, head trauma, and a broken nose. (R. 58-59.) Ms. Youse further testified that claimant's daughter recently had been assaulted and raped. (R. 57-58.)

    C.    **Testimony of Plaintiff's Witness, Dennis DeFrangesco**

Plaintiff presented testimony of her boyfriend, Dennis DeFrangesco. Mr. DeFrangesco has known plaintiff for fourteen years. (R. 71.) He opined that she has changed "drastically." (R. 72.) According to Mr. DeFrangesco, plaintiff initially seemed "a little depressed" and "drained, and achy." Subsequently, plaintiff contracted Lyme disease and Bell's Palsy. Id. After that time, she exhibited no motivation. The witness testified that at the time of the administrative hearing, plaintiff seemed like "an invalid, like, like a little baby." (R. 73.)

Mr. DeFrangesco explained that he and Ms. Youse took plaintiff to her doctors' appointments, shopped for plaintiff and cleaned her home. Id. He opined that plaintiff was incapable of cleaning her home due to pain. She wore the same clothing for days, and had to be "forced" to shower. (R. 73-74.) Mr. DeFrangesco explained that plaintiff showered with the assistance of her mother and a shower chair. (R. 74.) He added that she had difficulty walking and climbing stairs. Id. The witness estimated that plaintiff gained fifty or sixty pounds in the year prior to the hearing. She cried several times a day and constantly experienced headaches, which lasted for hours. (R. 75.) As a result, she sat in a dark room wearing sunglasses. Id. According to the witness, plaintiff wished she would die. (R. 75-76.)

    D.    **Testimony of VE, Nancy Harter**

VE Nancy Harter testified that plaintiff's previous jobs were clerical in nature. (R. 76.) Most of her work would be classified as sedentary, with the exception of the data entry position where she was required to lift in excess of ten pounds. (R. 76-77.) The ALJ posed the

following hypothetical the VE:

> Let's assume an individual of 48, with a limited education, and Claimant's past work, and let's assume that she is limited to sedentary work that is simple, repetitive work and low stress. Could she return to any of her past work?

(R. 77.) The VE opined that the hypothetical individual would be unable to perform any of plaintiff's previous jobs. (R. 78.) However, the VE added that an individual with those limitations would be able to perform the jobs of assembly line worker, inspector, examiner, checker and basic cashier. Id. The ALJ posed an additional hypothetical to the VE:

> Okay, the same individual, the same limitation, but in addition, and I'm looking at Exhibit 23F, poor to no abilities to demonstrate reliability, relate practically in social situations, behave in an emotionally stable manner, follow simple job instructions, could anybody work with those limitations?

Id. The VE opined that no one could work with those limitations. Id. In response to questioning by plaintiff's attorney, the VE testified that an individual who felt dizzy, drowsy and had a lack of concentration for more than one-third of the day would be unable to perform any work. (R. 78-79.)

### E. Testimony of ME Richard Cohen, M.D.

Dr. Cohen testified with respect to plaintiff's mental limitations. (R. 64.) He related that medical records revealed a diagnosis of "depression NOS." Id. The ME described plaintiff's limitations as follows:

> activities of daily living mildly impaired, social functioning is moderately impaired, concentration, persistence and pace is moderately impaired, and episodes of deterioration or decompensation, psychiatrically the records are, for extended periods of time are none. She also does not meet the C criteria. Psychiatrically, however, she does appear to have medical problems that I'm not an expert on such as possible, probable Lyme disease, back problems. However, that's not my field.

(R. 64-65.) The ME indicated that the evaluation of Ms. Miller, which demonstrated that plaintiff had poor abilities in every area, "doesn't go along with the rest of the medical records if we look at Dr. Zou's (PHONETIC) evaluations. I mean, it's nowhere even close to that." (R. 65.) Dr. Cohen added that his impressions of plaintiff differed from the one he formed after reading her medical file. The ME explained: "Yeah, I actually thought she, she looked worse today than I saw, after reading the medical records, I was going to say there are just mild functional limitations. After hearing her testimony and evaluating that with the medical records, I felt it was mild, moderate, moderate. But I would have said mild before I saw her." Id. Dr. Cohen added that based upon her depression, plaintiff could perform simple, repetitive tasks in a low stress setting. Id.

The ME opined that plaintiff was well maintained on Wellbutrin and Effexor. (R. 66.) He added that a recently prescribed medication, Cymbalta, was a good choice for an individual who suffers from pain and depression. Id. He explained that a patient needed to be on medication for at least three weeks before the efficacy of the medication could be determined. Id. Dr. Cohen acknowledged that plaintiff had a long history of depression which dated back to a suicide attempt at age twenty. He agreed that pain could increase the intensity of depression. (R. 68.) Finally, the ME conceded that there are times when a patient was in so much pain that they are more depressed than he would have expected. (R. 69.)

## IV. DISCUSSION

The ALJ found that the evidence of record supports a finding that plaintiff had the following severe impairments: degenerative disc disease, obesity and depression. The ALJ found that these impairments were not severe enough to meet or medically equal one of the

impairments listed in Appendix 1, Subpart P, Regulations No. 4. (R. 24-25.) Ultimately, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to perform sedentary work limited to simple, repetitive and low stress tasks. (R. 24.) Plaintiff contends that substantial evidence does not support the ALJ's decision. Specifically, plaintiff avers that the ALJ failed to give appropriate weight to the opinions of her treating physicians. Furthermore, plaintiff maintained that the ALJ's RFC assessment was erroneous since the ALJ improperly relied upon a VE's response to a faulty hypothetical in order to formulate the RFC. (Pl.'s Br. at 4-17.) Defendant maintains that substantial evidence supports the decision of the ALJ. (Def.'s Br. at 3-17.)

### A. **Treating Physician Opinions**

Plaintiff avers that the ALJ failed to give appropriate weight to the opinions of plaintiff's treatment providers. (Pl.'s Br. at 4-12.) Specifically, plaintiff argues that the opinions and functional assessments from treating physician Mary Ann O'Leary, D.O., and treating psychiatrist Z. Fernandes, M.D., that plaintiff has work preclusive limitations, are consistent with and supported by substantial evidence. Id. Plaintiff contends that such evidence was improperly rejected by the ALJ. Id. Moreover, plaintiff argues that the ALJ improperly rejected evidence from treating therapist Lizanne Welding Mills, M.S. Id.

A treating physician's opinion is entitled to controlling weight if it is consistent with the other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, if substantial evidence in the record supports a conclusion contrary to that of the treating physician, the ALJ may reject the treating physician's findings. Frankenfeld v. Bowen, 861 F.2d 405, 408

(3d Cir. 1988). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)); Thomas v. Barnhart, 2003 WL 21419154, at *5 (E.D. Pa. June 11, 2003). When rejecting a treating physician's opinion, "an ALJ may not make speculative inferences from medical reports," and may reject the opinion "outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotes and citations omitted).

In addition, while the Third Circuit has acknowledged that "greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant . . .[,] a statement by a plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994). Rather, the "ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Id. at 48. See Morales, 225 F.3d at 317 (explaining that the ALJ can choose whom to credit but cannot reject evidence for no reasons or for the wrong reason). The Third Circuit has stated, "where there is conflicting probative evidence in there record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an explanation is not provided." Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

The record reveals that Dr. Leary, plaintiff's treating physician, opined that plaintiff lacked the mental or physical functional capacity to work on a regular and continuing

11

basis. (R. 368-71.) The ALJ rejected Dr. Leary's mental assessment, indicating that Dr. Leary is "not a license or certified psychologist," and that her opinion was not "based on a therapeutic relationship but rather on one visit akin to a consultative examination." (R. 26-27.) A review of the record demonstrates that the ALJ's decision to reject the opinion of Dr. Leary is predicated, at least in part, on a mistake of fact. The record illustrates that Dr. Leary has been plaintiff's treating physician since August 2005. (R. 280.) Moreover, Dr. Leary and her colleagues have repeatedly diagnosed plaintiff with depression and prescribed antidepressant medication. (R. 285-86, 294-95.) While it is within the purview of an ALJ to weigh the opinions of treating physicians based upon their treatment relationship with a claimant, the record clearly demonstrates that the ALJ's decision to reject Dr. Leary's opinion was premised on her erroneous believe that Dr. Leary had examined plaintiff on only one occasion. (R. 26-27.) As stated above, an ALJ "cannot reject evidence for no reason or the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

Defendant argues that "Plaintiff criticizes the ALJ for purportedly noting that Dr. Leary's opinion was based upon 'one visit, akin to a consultative examination.' (Pl.'s Br. at 10-11). However, a review of the ALJ's decision reveals that the ALJ was discussing Ms. Mills', not Dr. Leary's, opinion (Tr. 27.)" (Def.'s Br. at 17.) However, the record clearly contradicts defendant's assertion. The ALJ stated Dr. Leary's opinion and then rejected it, indicating that "this opinion, as is the opinion of Ms. Mills, is based not on a therapeutic relationship but rather on one visit, akin go a consultative examination." (R. 27.) Accordingly, the court recommends that the case be remanded for the ALJ to properly weigh the opinion of Dr. Leary. Plaintiff focuses primarily on the mental limitations found by Dr. Leary, but also argues that the ALJ

12

"failed to address Dr. Leary's physical assessment at all." (Pl.'s Br. at 11.) Plaintiff's assertion is incorrect. The ALJ assessed Dr. Leary's physical assessment at pages 25-26 of her decision. Notwithstanding this fact, it is unclear whether the ALJ's consideration of Dr. Leary's assessment of plaintiff's physical condition would be impacted by the fact that Dr. Leary was a treating physician. Accordingly, this court recommends that upon remand, the ALJ consider both Dr. Leary's mental and physical assessments.

Plaintiff further avers that the ALJ improperly rejected the opinion of her treating psychiatrist, Dr. Fernandes. (Pl.'s Br. at 8-9; Pl.'s Rep. at 7-8.) Plaintiff maintains that while the ALJ recognized that Dr. Fernandes assessed plaintiff with a Global Assessment of Functioning ("GAF") score of fifty, the ALJ erroneously rejected that assessment.[1] A GAF of fifty is indicative of an individual with serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g. no friends, unable to keep a job). The ALJ reasoned that "there is evidence that the reported level of severity will persist for one year and because the date of the visit (less than two weeks before the scheduled hearing) raises issues as to whether its purpose was for treatment." (R. 22.) Plaintiff contends that the ALJ failed to recognize that claimant had been suffering from severe mental impairments for several years, as evidenced by the record and Dr. Fernandes' evaluation, thus satisfying the duration requirement. (R. 357-62.) Dr. Fernandes noted that plaintiff had a long history of depression, psychiatric hospitalizations, as well as a

---

[1] The GAF scale is a tool used to report a clinician's judgment of an individual's overall level of functioning and can be used to track the clinical progress of an individual in global terms, using a single measure. Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IV") at 32.

history of abuse. Id. As plaintiff suggests, in her assessment of Dr. Fernandes' opinion, the ALJ failed to consider that "plaintiff's depression had already been a serious impairment for at least a year prior to the date she was seen by Dr. Fernandes." (Pl.'s Rep. at 7-8.) Moreover, as stated above, plaintiff had received treatment from Dr. Leary and her colleagues for depression since 2006. In addition, the record reveals that plaintiff initially was evaluated at Creative Health, Dr. Fernandes' facility, over six months prior to the administrative hearing, not the week before the hearing as the ALJ suggests. (R. 363.) This court, therefore, recommends that the case be remanded for proper consideration of the opinions of Dr. Fernandes, and Dr. Leary, as discussed supra. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided."). The court notes that the Commissioner may well reach the same conclusion; however, in the absence of sufficient indication that the Commissioner considered all the evidence in case and applied the correct legal standards, this court cannot satisfy its obligation to determine whether substantial evidence supports the Commissioner's decision. See Terwilliger v. Chater, 945 F. Supp. 836, 844 ( E.D. Pa. 1996) (remanding case in the absence of sufficient indication that the Commissioner considered all of the evidence).[2]

---

[2] Plaintiff further contends that the ALJ improperly rejected the opinion of Ms. Mills, plaintiff's treating therapist, who opined that plaintiff had poor or no ability to relate to co-workers, interact with supervisors, deal with work stresses, or maintain attention and cooperation. The therapist further reported that plaintiff was "having a hard time being around people, decreased energy, having a hard time taking care of herself, difficulty with energy for routine tasks and personal hygiene." (R. 365.) The ALJ rejected the opinion of Ms. Mills for the following reasons: (1) Ms. Mills was not an acceptable medical source; (2) the records she provided were redacted and therefore not credible; and (3) Ms. Mills was not qualified to opine regarding plaintiff's physical problems. (R. 26.) Plaintiff concedes that Ms. Mills is not a

### B. Other Claims

Plaintiff also claims that the ALJ erred by failing to provide an adequate explanation of plaintiff's RFC. (Pl.'s Br. at 12-17; Pl's Rep. at 2-4). The ALJ must consider all relevant evidence when determining an individual's RFC in step four of the sequential analysis. 20 C.F.R. §§ 404.1545(a), 416.945(a). For cases determined at the administrative hearing level, determination of an individual's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c). As discussed supra, the court finds that the ALJ failed to properly consider the opinions of plaintiff's treating physicians. That failure impacted, or may impact, the ALJ's determinations regarding plaintiff's RFC. In light of the court's recommendation that the case be remanded to the Commissioner for further consideration of the treating physician evidence, this court further recommends that upon remand, the Commissioner reevaluate plaintiff's RFC.

Plaintiff also avers that the ALJ's RFC determination is erroneous, since the ALJ relied upon the VE's responses to a faulty hypothetical in order to formulate the RFC. (Pl.'s Br. at 12-17.) The law with respect to the hypothetical question is well-established. Third Circuit precedent holds that the "hypothetical question posed to a [VE] 'must reflect all of a claimant's impairments.'" Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). The hypothetical question also must reflect a

---

medical source, but argues that her opinion should have been considered pursuant to SSR 06-03p, and not outright rejected by the ALJ on the enumerated bases. Since the court recommends that the case be remanded for consideration of the opinions of plaintiff's treating physicians, the court further recommends that the ALJ reevaluate the opinion of Ms. Mills, as this opinion is corroborated by the opinions of Drs. Leary and Fernandes. Furthermore, this court recommends that the ALJ recontact plaintiff's treating sources to obtain unredacted copies of plaintiff's medical records.

plaintiff's credibly established limitations. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (emphasis added.) Furthermore, the VE's testimony with regard to "a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question [posed to the VE] accurately portrays the claimant's individual physical and mental impairments." Burns, 312 F.3d at 123 (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). See also Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (same); Rutherford, 399 F.3d at 554 (same); Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004) (same).

In the instant case, plaintiff argues that the ALJ omitted from her hypothetical question specific limitations which the ALJ herself found in her decision to be credibly established. (Pl.'s Br. at 12-14.) The ALJ found that plaintiff had moderate limitations in social functioning, as well as moderate limitations in concentration, persistence and pace. (R. 23.) Plaintiff maintains that the ALJ failed to convey these limitations in her hypothetical to the VE. (Pl.'s Br. at 12-14.) Defendant contends that the hypothetical question in the case sub judice "more than adequately conveyed Plaintiff's limitations." (Def.'s Br. at 21-24.) Defendant added that the ALJ relied upon Dr. Cohen, a psychiatrist, to indicate any vocationally relevant mental health limitations plaintiff possessed. Defendant maintains that

> while Dr. Cohen recognized that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace . . . Dr. Cohen opined that Plaintiff's only vocationally relevant limitations from a mental standpoint given these difficulties was a restriction to doing simple, repetitive tasks in a low-stress setting. These are the precise limitations that the ALJ incorporated into the hypothetical questions that he [sic] posed to the VE.

(Def.'s Br. at 23.) As an initial matter, this court notes that defendant relies upon the hearing testimony of Dr. Cohen. However, as plaintiff points out, Dr. Cohen never examined plaintiff

16

and admitted that plaintiff appeared to be in worse condition than her medical records depicted. (R. 65.) Dr. Cohen also appeared to rely upon the assessment of Dr. Zal to discredit the opinion of Ms. Mills, plaintiff's therapist. When asked his opinion of the assessment of Ms. Mills, Dr. Cohen responded: [i]t doesn't go along with the rest of the medical records if we look at Dr. Zal's evaluation. I mean, it's nowhere even close to that." Id. This court notes that the ALJ expressly rejected the assessment of Dr. Zal, the consultant upon whom Dr. Cohen apparently relied. (R. 26.)

Furthermore, as discussed above, a hypothetical question posed by an ALJ to a VE must contain all of plaintiff's credibly established limitations. In this case, the ALJ expressly found that claimant had moderate limitations in social functioning, as well as moderate limitations in concentration, persistence and pace. In Ramirez, the Third Circuit addressed a similar fact pattern and stated as follows:

> The Commissioner contends that the limitation to one to two step tasks is sufficient, but we agree with the Magistrate Judge that a "requirement that a job be limited to one to two step tasks, as was stated in the hypothetical relied upon by the ALJ, does not adequately encompass a finding that [Ramirez] 'often' has 'deficiencies in concentration, persistence or pace,' as was noted by the ALJ in her decision and on the PRTF attached to the decision." Most importantly, this limitation does not take into account deficiencies in pace. Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in pace might be able to perform simple tasks, but not over an extended period of time. If Ramirez often suffers deficiencies in pace and this had been included in the hypothetical, vocational expert Stratton may have changed her answer as to whether there were jobs in the local or national economy that Ramirez could perform. In fact, the vocational expert testified that each of the jobs suitable for Ramirez (assembler, packer, and inspector) would have daily production quotas and that Ramirez would have to maintain a certain degree of pace to maintain those jobs.
>
> This omission from the hypothetical runs afoul of our directive in Chrupcala that a "hypothetical question posed to a vocational expert 'must reflect all of a

17

> claimant's impairments.'" Chrupcala, 829 F.2d at 1276, as well as our statement
> in Burns that "great specificity" is required when an ALJ incorporates a claimant's
> mental or physical limitations into a hypothetical. Burns, 312 F.3d at 122.
> Indeed, the SSA's own ruling requires a "more detailed assessment" of the
> claimant's mental limitations at step five of the disability analysis. See SSR 96-
> 8p (July 2, 1996).

372 F.3d at 554-55 (emphasis in original).

Other decisions of the Third Circuit and from this court issued after Ramirez have refused to uphold an ALJ's ruling where a claimant either "often" had deficiencies or had "moderate" deficiencies in concentration, persistence or pace, and where the ALJ limited the claimant to simple and routine and/or low stress work. See, e.g., Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (where medical evidence showed that plaintiff suffered stress in a job environment, limitation to simple tasks, without individualized inquiry, was not supported by substantial evidence); Barry v. Astrue, 2007 WL 2022085, at *4 (E.D. Pa. July 9, 2007) (finding that hypothetical restriction to simple, low stress, one-to-two step tasks, involving limited contact with the public and co-workers did not adequately encompass credibly established moderate limitations on concentration, persistence and pace); Steininger v. Barnhart, 2005 WL 2077375, at *3-4 (E.D. Pa. Apr. 24, 2005) (limitations to "simple, repetitive tasks" and "only occasional contact with the public and co-workers" does not sufficiently incorporate ALJ's findings that plaintiff had a "moderate degree of limitation in the concentration, persistence and pace area of functioning"); Colon v. Barnhart, 424 F. Supp. 2d 805, 811 (E.D. Pa. 2006) ("A finding of 'often' under the old scale therefore roughly equates to a 'moderate' deficiency."); Dynko v. Barnhart, 2004 WL 2612260, at *5 n.34 (E.D. Pa. Nov. 16, 2004) (holding that "'often' and 'moderate' fall on the same point on a five-point continuum, and therefore can be considered

equivalent findings").[3]

As stated above, the ALJ based her RFC in part on mistakes of fact which may have impacted her ultimate RFC determination. In the case at bar, the ALJ found that plaintiff suffered from "moderate" difficulties in maintaining concentration, persistence and pace. (R. 19.) The ALJ failed to incorporate these limitations in her hypothetical. Furthermore, the ALJ found that plaintiff had moderate limitations in social functioning. This limitation was not addressed at all by the ALJ in her hypothetical to the VE. Moreover, plaintiff's limitations were supported by medical evidence and the testimony of two witnesses. Finally, plaintiff's ability to maintain concentration, persistence and pace is of particular import in this case, since at the administrative hearing the VE noted that an individual without the ability to maintain attention and concentration for more than one-third of an eight hour work shift would be incapable of performing work. (R. 78-79.) Accordingly, this court recommends that upon remand the ALJ should properly evaluate plaintiff's RFC.

---

[3] This court is aware that in an unpublished decision issued after Ramirez, the Third Circuit held that an ALJ's hypothetical that limited the claimant's work to "simple, routine tasks," based on the claimant's moderate limitations in concentration, persistence and pace, adequately reflected plaintiff's limitations borne out by the record. McDonald v. Astrue, 293 Fed. Appx. 941, 946-47 (3d Cir. 2008). The McDonald panel stated that their case was distinguishable from Ramirez, since the claimant in Ramirez "*often* suffered from deficiencies in concentration, persistence, or pace," whereas the claimant in McDonald suffered only *moderate* limitations. Id. at 947, n.10. (emphasis in original). This court notes that this is an unpublished decision and only published opinions of the Third Circuit are considered precedential. U.S. v. Dowdy, 216 Fed. Appx. 178, 182 (3d Cir. 2007) (not precedential); Third Circuit Internal Operating Procedure ("I.O.P.") 5.3 & 5.7. Furthermore, in Bunch v. Astrue, 2008 WL 5055741, at *3 and n.4 (E.D. Pa. Nov. 26, 2008) (Baylson, J.), a decision issued after the McDonald case, the court explained that with respect to "moderate" limitations as opposed to "often," a "slight change in nomenclature does not circumvent Ramirez's requirement that the hypothetical provided to the vocational expert be accurate." Finally, as explained below, the ALJ never addressed the fact that plaintiff had moderate limitations in social functioning, and the impact this limitation may have on plaintiff's ability to perform work.

## V. CONCLUSION

After a careful review of the evidence in the record, this court concludes that there is not substantial evidence to support the ALJ's determination that plaintiff is not disabled. Thus, this court recommends that the request for review be granted so that the case can be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to further develop the record in accordance with this Report and Recommendation.

## R E C O M M E N D A T I O N

AND NOW, this 5th day of January, 2010, upon consideration of plaintiff's Brief and Statement of Issues in Support of Request for Review, defendant's response thereto, and plaintiff's reply, it is respectfully recommended that plaintiff's Request for Review be GRANTED and this case REMANDED for further proceedings consistent with this Report and Recommendation.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge